UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MARK LONG,                                                          6:12-cv-1383-TC

                              Plaintiff,

         v.                                                         ORDER

JOHN KROGER, SEAN C. RIDDELL and the
STATE OF OREGON, by and through THE
OREGON DEPARTMENT OF JUSTICE,

_____ Defendants.

COFFIN, Magistrate Judge:

         In May 2009, then-governor Kulongoski[1] temporarily assigned plaintiff Mark Long from his

position as Administrator of the Building Code Division of the Department of Consumer and

Business Services (DCBS) to acting Director of the Oregon Department of Energy (ODE).  While

serving as ODE's acting Director, plaintiff had several discussions with Toward Energy Efficient

Municipalities (TEEM), an Oregon based company owned by then-gubernatorial candidate now-

_____

[1]All references to "Governor" refer to Kulongoski.

Page 1 - ORDER

governor John Kitzhaber's partner Cylvia Hayes[2], about applying for a grant being offered by the United States Department of Energy to fund energy related jobs through state based programs. In August 2009, the ODE, with assistance from TEEM (which Hayes offered without being asked), applied for the federal grant, and in September, the United States Department of Energy awarded a grant to Oregon.

Four companies, including TEEM, bid for the use of the federal funds. TEEM was the only Oregon-based company of the four. ODE staff gave R.W. Beck the highest ranking and TEEM the lowest. When plaintiff learned that ODE ranked an out-of-Oregon company first in the evaluation process, he suggested–in keeping with the federal funds' goal of stimulating Oregon's economy–that an Oregon-based company should have some presence in the contract awarded from the funds. Plaintiff did not know, however, that TEEM was the only Oregon-based company bidding.

Taking into account plaintiff's suggestion and the fact that TEEM had unique attributes that other bidders lacked,[3] ODE asked (but did not require) Beck to subcontract a portion of the federal grant to TEEM. Beck agreed as long as the contract price was increased to cover overhead related to subcontracting with TEEM. ODE re-scored Becks' proposal using the revised cost projection and still ranked Beck's proposal highest. In June 2010, ODE and Beck signed a final contract, which reflected the increased amount. In the meantime, plaintiff's assignment to ODE ended, and he

———————————

[2]As well as being Kitzhaber's partner, Hayes was also Chair of the Governor's Renewable Energy Workgroup and a significant player in Oregon's renewable energy community.

[3]For example, ODE staff found that in addition to being the only Oregon-based company to submit a proposal, TEEM proposed a unique and useful approach to conducting part of the work. TEEM was a smaller company and lacked Beck's resources and breadth of operations, but TEEM had close and useful relationships with local Oregon renewable energy providers. (#1-1 at ¶ 28-29).

Page 2 - ORDER

returned to DCBS and Kulongoski appointed him Deputy Director of DCBS.

About two months later, in August 2010 then-Chief of the Criminal Division for the Oregon Department of Justice (ODOJ) Sean Riddell began a criminal investigation into whether plaintiff and others violated the law by routing federal funds to TEEM to curry favor with Hayes's partner Kitzhaber. Shortly after the investigation began, ODOJ personnel determined there was no basis to believe that plaintiff acted unlawfully.[4] Despite this finding, Riddell told Kulongoski's Deputy Chief of Staff Brian Shipley, who was plaintiff's de-facto supervisor, that plaintiff had violated more than a dozen Oregon laws by funneling public funds to Hayes to curry favor with Kitzhaber. Despite continuing the investigation until December 2010, Riddell found no basis to prosecute plaintiff.

In mid-December 2010, Riddell was notified that then-attorney general John Kroger wanted to send two letters to Kulongoski. The first would formally close the investigation and decline to prosecute the individuals in question. The second would formally recommend that Kulongoski fire plaintiff. On December 29, 2010, Riddell sent a letter to Kulongoski notifying him that no criminal charges would be filed in the investigation. The letter did not discuss any employee by name except for plaintiff. The same day, Kroger sent a letter to Kulongoski recommending he fire Long. As a result of Riddell and Kroger's actions, plaintiff's employer placed him on an indefinite administrative leave on December 29, 2010, requiring him to remain at home between 8 A.M. and 5 P.M. with a one hour meal period.

In January 2011, DCBS offered plaintiff two "name clearing hearings," but refused to tell him the allegations from which he needed to clear his name. Despite Kroger's attempts to dissuade

---

[4]The factual allegations set forth in plaintiff's complaint must be accepted as true for purposes of addressing defendant's motion to dismiss.

Page 3 - ORDER

him, Kulongoski appointed an independent investigator to investigate Riddell's and Kroger's recommendation that he fire plaintiff. Riddell altered the record he gave the independent investigator by removing selected documents from the criminal investigation file. Riddell also interfered in the independent review to affect the outcome. During the independent investigation, plaintiff filed public records requests, including requests of the Attorney General's office. When Kroger and Riddell did not respond to plaintiff's public records requests, plaintiff filed a complaint under Oregon's Public Records law in Marion County Circuit Court seeking a court order compelling the documents.

After plaintiff filed his public records complaint, Riddell signed a declaration swearing that the ODOJ had provided plaintiff with all the documents he requested. Kroger submitted Riddell's declaration in support of a motion for summary judgment on plaintiff's public record complaint. Both the motion and declaration were withdrawn prior to any ruling after the ODOJ discovered that it had not produced certain requested documents and that Riddell's declaration was not true. During discovery, plaintiff sought documents relating to an immunity agreement between the state and a key witness. Riddell told an Assistant Attorney General defending the complaint that such a document did not exist. Plaintiff later learned that Riddell had destroyed this document as well as other public records that would have helped plaintiff defend himself against Riddell's and Kroger's accusations.

Among other things, the court found that Kroger unreasonably failed to respond to the public record request and that Riddell routinely "double deleted" responsive emails from his inbox, sent mail box and deleted items folder despite knowing about the records request. The court stated "'there was a deliberate choice not to produce the documents during the time period of the request'

and 'when [the requested documents] would have been most useful to Long'" and that Riddell's testimony in the case had been unpersuasive and "deliberately evasive." (#1-1 at ¶ 85).

On June 17, 2011, Kroger contacted plaintiff's lawyers by phone to, among other things, apologize for Riddell's behavior during the investigation of plaintiff. Kroger also acknowledged his own concerns about Riddell's behavior and judgment, noting that Kroger had observed Riddell's lack of professionalism, inability to control his anger and mistakes handling cases. Kroger said retaining Riddell in his position as chief counsel was a mistake and he said he had asked Riddell to resign effective immediately. A few days later, on June 24, 2011, plaintiff delivered a tort claim outlining the claims contained in this suit.

Plaintiff filed this action against defendants Kroger, Riddell and the State of Oregon by and through the Oregon Department of Justice in state court on June 20 2012, and defendants removed it to federal court in August 2012. Plaintiff alleges federal equal protection and due process claims and state law racketeering, intentional infliction of emotional distress, interference with economic relations and negligence claims. Both parties have consented to magistrate judge jurisdiction. Currently before me are defendants' motions to dismiss (#s 7, 10) plaintiff's claims on the grounds that he fails to state any claims against them upon which this court may grant relief. Kroger and the state of Oregon request under Fed. R. Evid. 201 that I take judicial notice of the documents filed in the Marion County Circuit Court in <u>Mark Long v. John Kroger in his Official Capacity as Attorney General for the State of Oregon</u>, Case No. 11C14422, and other documents. (#s 12, 32, 36). I grant the motions for judicial notice. I held oral argument on the motions to dismiss on November 14, 2012. For the reasons outlined below, I grant the motion in part and deny it in part.

///

Page 5 - ORDER

## Standard

Rule 12(b)(6) allows for dismissal of a complaint based on either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). When considering a Rule 12(b)(6) motion, the court must accept all factual allegations in the complaint as true and construe them in a light most favorable to the nonmmoving party. Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1014 (9th Cir. 2012). "[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6). Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 566 U.S. at 678.

## Discussion

As noted above, defendants move to dismiss plaintiff's claims against them on the grounds that: they are shielded from liability by absolute, qualified, discretionary and/or immunity; plaintiff has failed to set forth the requisite facts to establish his claims; and the doctrine of claim preclusion bars this action because plaintiff could have litigated these claims in his Oregon Public Records law complaint.

## I.    42 U.S.C. § 1983 Claims

Plaintiff asserts two counts in his section 1983 claim: violation of his rights to equal protection and denial of his right to due process. (#1-1 at pp. 34-36). In count one, he argues that

Riddell intentionally treated him differently from other similarly situated individuals the ODOJ investigated. In count two, plaintiff contends that Riddell denied him due process by engaging in behavior which "shocks the conscience." Plaintiff argues that Kroger is liable on both counts because he supervised Riddell and knew or should have known of Riddell's wrongful acts and prevented them.

### A.    Immunity

Defendants[5] assert that absolute and qualified immunity shields them from liability for plaintiff's section 1983 claims. The United States Supreme Court has recognized that some form of immunity from suits for damages is necessary to shield government officials from "undue interference with their duties and from potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982).

### 1.    Absolute Immunity

In general, prosecutors are absolutely immune from liability under section 1983 for their conduct insofar as it is "intimately associated with the judicial phase of the criminal process." Burns v. Reed, 500 U.S. 478, 486 (1991) (internal quotations omitted); Miller v. Gammie, 335 F.3d 889, 897 (9th Cir. 2003) ("[T]o enjoy absolute immunity for a particular action, the official must be performing a duty functionally comparable to one for which officials were rendered immune at common law."). When prosecutors perform administrative or investigative functions, however, only qualified immunity is available. Buckley v. Fitzsimmons, 509 U.S. 259, 271-73 (1993). Thus, a prosecutor's actions are not absolutely immune just because a prosecutor performed them. Id. at

---

[5]Riddell joins in "most of the motions and arguments advanced by Kroger and the State." (# 7 at 2).

Page 7 - ORDER

273. To determine whether an action is judicial, administrative or investigative, I must examine the "nature of the function performed, not the identity of the actor who performed it." Kalina v. Fletcher, 552 U.S. 118, 127 (1997) (internal quotations omitted). The official seeking immunity bears the burden of demonstrating that absolute immunity is justified for the function in question. Buckley, 509 U.S. at 269. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the course of their duties. Burns, 500 U.S. at 486-87.

There is no bright line between functions, but it is clear that absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." Burns, 500 U.S. at 494. It is well established that a prosecutor has absolute immunity for a decision not to prosecute a case, see Burns, 500 U.S. at 496, and that a prosecutor's professional evaluation of a witness is entitled to absolute immunity even if that judgment is harsh, unfair or clouded by personal animus, Roe v. City and Cnty of San Francisco, 109 F.3d 578, 584 (9th Cir. 1997). On the other hand, it is also clear that an official is not entitled to absolute immunity for conduct involving termination, demotion and treatment of employees. Forrester v. White, 484 U.S. 219, 228-30 (1988) (holding that a judge is not entitled to absolute immunity in his capacity as an employer and may be liable for unconstitutional conduct involving the termination, demotion and treatment of employees); Meek v. County of Riverside, 183 F.3d 962, 967 (9th Cir.1999) (holding that a judge's decision to fire an employee was an administrative decision not entitled to absolute immunity). Further, prosecutors are not entitled to absolute immunity for giving advice during the investigative phase of a criminal case, see Burns, 500 U.S. at 493, performing acts which are generally considered functions of the police, see Buckley, 509 U.S. at 274-76, or making statements to the public concerning criminal proceedings, see id. at 277-78.

Page 8 - ORDER

To determine whether absolute immunity shields Kroger and Riddell from section 1983 liability, I must define the particular function they were engaged in when they allegedly violated plaintiff's rights to due process and equal protection. Their actions fit within four categories of conduct: (1) actions taken during the 2010 criminal investigation into plaintiff's conduct, including Kroger sending a letter to the Governor recommending plaintiff's termination and Riddell telling plaintiff's supervisor that plaintiff had violated Oregon regulations in order to funnel public money to Hayes and TEEM; (2) Riddell's discussions with the independent investigator reviewing the recommendation that plaintiff be fired; (3) publically posting documents related to the ODOJ's investigation on the ODOJ website; and (4) Riddell's actions during the public records request and complaint filed under Oregon's public records law.

### a.    Actions during 2010 investigation

Plaintiff alleges that during the investigation Riddell–who was sometimes accompanied by a special agent from the Federal Bureau of Investigation–interviewed over twenty individuals, and falsely told plaintiff's supervisor that plaintiff had violated Oregon regulations. Plaintiff alleges that Kroger supervised Riddell in these actions. Further, at the conclusion of the investigation, Kroger recommended that the Governor terminate plaintiff. Riddell and Kroger are not entitled to absolute immunity for this conduct. When Riddell involved himself in the investigation he was performing a detective's role in searching for clues and corroboration that might give him probable cause to recommend that plaintiff be charged. It is well settled that when a prosecutor performs the investigative functions normally performed by a detective or police officer it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one but not the other." Buckley, 509 U.S. at 273. It is also well established that a prosecutor is not entitled to absolute immunity for

making a statement about an ongoing criminal matter, see id. at 274, or for recommending an employee be terminated, see Forrester, 484 U.S. at 228-30. Accordingly, Riddell and Kroger are not entitled to absolute immunity for actions during the 2010 investigation.

### b.    Involvement with the Independent Investigation

Plaintiff alleges that, when Riddell and Kroger failed to find grounds to criminally prosecute him, they interfered with the Governor's attempt to retain independent counsel to review the underlying contracting issue. Plaintiff claims that Kroger refused to honor the Governor's request for an independent investigation and claims that, after an independent investigator was hired, Riddell interfered with and influenced the independent investigator's work. By inserting themselves into the independent investigation, Kroger and Riddell were, at best, performing an administrative function and, as such, could only be entitled to qualified immunity. Forrester, 484 U.S. at 228-30. Their involvement in the independent investigation (refusing to retain independent counsel, Riddell's direct collaboration with the independent investigator) was an attempt to disrupt the investigation. Thus, Kroger and Riddell are not entitled to absolute immunity for their involvement with the independent investigation.

### c.    Posting of Materials on the ODOJ's Website

After closing the criminal investigation, plaintiff's attorneys received notice that the ODOJ planned to release materials relating to the investigation to the media but, before release, would offer plaintiff a name clearing hearing.  Despite objections that the materials contained sensitive information, such as social security numbers, home addresses, and phone numbers, the ODOJ posted the materials on its website where it was accessed by several news media outlets. It is well settled that prosecutors do not enjoy absolute immunity making statements to the public concerning criminal

Page 10 - ORDER

proceedings. <u>Buckley</u>, 509 U.S. at 277-78. Thus, Kroger and Riddell are not absolutely immune for their release of investigation materials.

### d.    Actions during Public Records Request and Complaint

Plaintiff asserts that Kroger and Riddell unlawfully refused to comply with his counsels' public records request and that Riddell filed a false declaration during his complaint filed under Oregon's public records law. Relying on <u>Burns v. Cnty of King</u>, Defendants argue that Riddell is immune from liability for his false declaration because witnesses are absolutely immune from liability for testimony given at trial. <u>Burns</u>, 883 F.2d 819, 821 (9th Cir. 1989). Absolute immunity for witnesses, however, generally applies to those who testify in a criminal trial, <u>see</u> <u>Briscoe v. LaHue</u>, 460 U.S. 325, 326 (1983) or a person who functions as a witness in an adversarial proceeding to revoke a defendant's bail, <u>see</u> <u>Burns</u>, 883 F. 2d at 821-23. Riddell performed neither of these functions. Absolute immunity is not available for prosecutors who perform an act that any competent witness could have performed. <u>Kalina v. Fletcher</u>, 522 U.S. 118, 131 (1997) (internal citations omitted); <u>see also</u>, <u>Cruz v. Kauai Cnty</u>, 279 F.3d 1064, 1067 (9th Cir. 2002) (prosecutor not entitled to absolute immunity for his conduct in swearing to facts in support of a bail revocation motion nor is prosecutor entitled to absolute immunity as a witness). "Even when the person who makes the constitutionally required 'oath or affirmation' is a lawyer, the only function that [he] performs in giving sworn testimony is that of a witness." <u>Kalina</u>, 522 U.S. at 131. Further, when inserting themselves into plaintiff's public records requests, Long and Riddell were acting in an administrative capacity and thus not entitled to absolute immunity. <u>Forrester</u>, 484 U.S. at 228-30.

### 2.    Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. In determining whether qualified immunity shields Kroger and Riddell from liability, I must determine whether their conduct violated plaintiff's clearly established rights and whether a reasonable person would have known their conduct violated such. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, plaintiff alleges that Kroger and Riddell violated his constitutional rights by pursuing a criminal investigation when they knew plaintiff had not broken any laws, recommending that plaintiff be fired, posting material on the internet regarding the investigation, intentionally destroying exculpatory evidence, interfering with and misleading the state's independent investigator and knowingly giving plaintiff's supervisor false information about the investigation. Defendants appear to argue that the law did not clearly establish that defendants' alleged conduct would violate plaintiff's constitutional rights.

This Circuit recognizes a "clearly established constitutional right not to be subjected to criminal charges" on the basis of fabricated evidence, see Deveraux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) and that a government official's intentional fabrication of false evidence as part of a civil license revocation proceeding violates substantive due process, see Costanich v. Dept. of Social and Health Serv., 627 F.3d 1101, 1110-11 (9th Cir. 2010). It is true that plaintiff does not allege that defendants subjected him to criminal charges on the basis of false evidence that was deliberately fabricated as the plaintiff in Devereaux did. His complaint, however, alleges more than a constitutional right to have had the criminal investigation proceed in a certain manner.[6] Instead,

---

[6]During oral argument, Kroger's counsel argued that the gravamen of plaintiff's allegations were about how the criminal investigation was conducted. (#39 at 18:10-17).

Page 12 - ORDER

it alleges that defendants subjected him to an ongoing criminal investigation without any legitimate basis for doing so and recommended that he be terminated on the basis of deliberately fabricated false evidence. See e.g. Hanes v. Zurick, 578 F.3d 491, 496 (7th Cir. 2009) (plaintiff states plausible claim against public official who targets him without any legitimate purpose). I find that even if plaintiff's allegations are not identical to the assertions in Devereaux, the wrongfulness of this conduct is apparent in light of pre-existing law. Giebel v. Sylvester, 244 F.3d 1182, 1189 (9th Cir. 2001). Moreover, it is clearly established that the state cannot deprive a person of a the freedom to engage in his chosen occupation without due process of law and that means an employee is entitled to a name clearing hearing prior to the public release of stigmatizing information regarding an employee. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 572-73 (1972).

I find that because the unlawfulness of the alleged conduct is apparent in light of pre-existing law, qualified immunity does not shield Kroger and Riddell from liability on plaintiff's section 1983 claim.

B.    **Class-of-one**

Relying on Engquist v. Oregon Dep't of Agric., defendants argue that plaintiff's equal protection claim must be dismissed because a single state employee cannot bring a "class of one claim" for arbitrary, vindictive or malicious treatment during public employment. Engquist, 553 U.S. 591, 605 (2008). In Engquist, the Supreme Court acknowledged the "long held the view that there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'" Id. at 598 citing Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 896 (1961). The court went on to state that "the class-of-one theory of equal

Page 13 - ORDER

protection–which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in some way that must survive at least rationality review–is simply a poor fit in the public employment context." Id. at 605.

Here, however, plaintiff does not argue that his employer's arbitrary, vindictive or malicious actions violated his right to equal protection. Instead, he claims that Kroger and Riddell–in their capacity as prosecutors for the State of Oregon and not as parties to plaintiff's employment relationship–treated him differently than other Oregon citizens the ODOJ investigated on suspicion of criminal activity. (#1-1 at ¶ 90). At oral argument, Kroger's counsel argued that "all of the effort that took place after December 29 was not aimed at criminal prosecution....All of that conduct after December 29 was solely for the employment function of determining whether or not these four individuals should be disciplined, and if so, what discipline should be applied." (#39 at 14:2-13).[7] While the independent investigation was requested by the Governor to review the events surrounding the investigation for purposes of employment action, see (#1-1 at ¶ 64), the events plaintiff complains of–Kroger's refusal to honor the Governor's request, Riddell's interference with the independent review–had nothing to do with an employment action. Instead, the events of which plaintiff complains concern his allegedly being irrationally singled out as a so-called "class-of-one"

_____

[7]Kroger's counsel later stated "[a]s I read the complaint, it is not limited to the employment portion of the case which, requires, then, a further analyis even after the employment conduct is removed from the case, the post-December 29th through the completion of the formalized complaint of the–the formalized completion of that and Mr. Long's return to active service. Even if those allegations are taken out of the complaint, I understand that the complaint still attempts an equal protection and a due process claim for the prior criminal act investigation before December 29 and also for conduct relating to the public records requests and the public records lawsuit that took place throughout that time." In response to the court's inquiry of whether "insofar as the class of one claim can be segregated from the employment context, then Enquist would not apply," Kroger's counsel replied "yes." (#39 at 15:24-25 to 16:1-14).

Page 14 - ORDER

with regard to state prosecutor's continued involvement in a review of the criminal investigation. I find that the allegations regarding the post-December 29 events regarding the independent investigation raise issues of irrationally different treatment in the regulatory context. Engquist, 553 U.S. at 601-02 citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); see also Solis v. City of Fresno, 2011 WL 5825661 * 6 n. 3 (E.D. Cal. November 17, 2011) (finding that allegation that city police officer singled plaintiff out by more aggressively pursuing criminal charges after she reported sexual harassment related to the criminal investigation against her and not to the City's dealings with her as an employee).

Similarly, I find that the pre-December 29 criminal investigation and the actions related to the public records request and public records complaint involve government actions in the regulatory rather than employment context. During oral argument on these motions, Kroger's counsel conceded that, if plaintiff had been an employee of the Beck company instead of the State of Oregon and Riddell and Kroger had engaged in the same sort of criminal investigation, defendants' Engquist argument would not apply. (#39 at 15:2-17). It is clear that plaintiff's class-of-one claims concerning the events related to the pre-December 29 end of the investigation and the public records requests and complaint relate to investigation of possible criminal charges against him and not to the state of Oregon's dealings with him as a state employee. Solis, 2011 WL 5825661 * 6 n. 3. Further, it is generally accepted that, although some "discretionary [state] decision making [about who and how to investigate] is off-limits from class-of-one claims," a plaintiff may state a class-of-one claim against a public official whose actions are motivated by malice or who harasses, arrests or otherwise targets him without any conceivable legitimate purpose. Hanes, 578 F.3d at 496; see also Lovejoy v. Arpaio, 2011 WL 466010 * 11 (D. Ariz. 2010) (finding that allegation that sheriff targeted

Page 15 - ORDER

plaintiff for arrest for reasons unrelated to any legitimate objective set forth a class-of-one claim);

Del Marcelle v. Brown County Corp, 680 F.3d 887, 899 (7th Cir. 2012);

My consideration of plaintiff's equal protection claim does not, however, end with my

conclusion that Engquist does not bar it. I must also consider whether plaintiff sufficiently alleged

that he was: (1) intentionally treated differently from others similarly situated; and (2) that there is

no rational basis for the difference in treatment. Olech, 528 U.S. at 564. Review of the complaint

establishes that plaintiff has sufficiently set forth both elements at this stage of the pleadings.

**C.    Due Process Claim**

Plaintiff alleges a due process claim based on a "shocks the conscience theory." Defendants

assert that, as their alleged behavior was objectively reasonable under the circumstances, plaintiff

fails to establish any shocking conduct thus they are entitled to dismissal of this claim. This Circuit

has recognized that attempting to deprive a person of employment by presenting deliberately

fabricated or false evidence supports a shocks the conscience due process claim. Costanich, 627

F.3d at 1110-11. Here, plaintiff has alleged that Riddell continued to investigate plaintiff despite

a August 2010 finding that plaintiff had not engaged in unlawful conduct and knowingly presented

false information to plaintiff's employer. I find that, at this stage of the pleadings, plaintiff has

sufficiently alleged a "shocks the conscience" due process claim.

**D.    Supervisory Liability**

Defendants Kroger and the State of Oregon argue that the section 1983 claims against

Kroger must be dismissed because plaintiff has not sufficiently alleged that Kroger's personal

involvement in the alleged deprivation of plaintiff's constitutional rights. Liability under section

1983 "arises only upon a showing of personal participation by the defendant." Taylor v. List, 880

F.2d 1040, 1045 (9th Cir. 1989). The requisite personal participation, however, may be established through a showing that the defendant failed to intervene to stop an alleged violation or knew of a practice and procedure that resulted in a violation. Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) ( concluding that failure to intervene to stop an alleged violation could be sufficient to establish liability); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (en banc) (finding that knowledge of policy and practice that lead to alleged deprivation sufficient to establish liability). This Circuit recently reaffirmed that a supervisor may be liable under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011) (internal quotations marks and citation omitted).

Plaintiff makes specific allegations against Kroger relating to his equal protection and due process claims. Plaintiff claims Kroger told plaintiff's lawyers that he had concerns about Riddell's behavior and judgment–Riddell's lack of professionalism and inability to control his temper–and that retaining Riddell as Chief Counsel was an error because Riddell had made a number of mistakes in his handling of cases. This allegation sets forth a sufficiently detailed claim of Kroger's culpability for inaction his training and/or control of Riddell and sufficiently alleges a claim for a reckless or callous indifference to the rights of others. Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

Moreover, plaintiff alleges that Kroger was personally involved in many of the actions which form the basis for the section 1983 claim. For example, plaintiff claims that Kroger sent a letter to the Governor recommending plaintiff be fired, refused to allow the Governor to appoint independent

counsel to review the criminal investigation and refused to provide documents requested by plaintiff to defend himself during the criminal investigation. With regard to the allegation that the ODOJ posted the materials related to the criminal investigation on their website in violation of Oregon law, plaintiff alleges that "Defendant Kroger intended to provide [them] to the media...." (#1-1 at ¶ 71). I find that for the purposes of the motion to dismiss, this allegation is sufficient to allow the claim regarding Kroger's liability for posting the materials to go forward. See e.g., Skilstaf, 660 F.3d at 1014 (when considering a Rule 12(b)(6) motion, a court must construe all allegations in favor of the nonmoving party).

In short, I find plaintiff's complaint alleges both direct personal involvement by Kroger and a sufficient causal connection between Kroger's alleged conduct and the constitutional deprivations to move forward. Starr, 652 F.3d at 1207-08. I deny Kroger and the state's motion to dismiss the section 1983 claim against Kroger based on lack of personal involvement.

## II.    Racketeering Under Oregon's RICO Statute

Defendants argue that I must dismiss plaintiff's ORICO (Oregon Racketeer Influence and Corrupt Organizations Act) claim because the state has not waived its sovereign immunity for this claim. A state, as a sovereign, cannot be sued without its consent. Rogers v. Holmes, 214 Or. 687, 692 (1958). A plaintiff cannot avoid the state's sovereign immunity by suing individual state officials or agencies. Kreiger v. Just, 319 Or. 328, 332 (1994); Hanson v. Mosser, 247 Or. 1, 6 (1967). The Oregon legislature may waive the sovereign immunity enjoyed by the state and its officials. Oregon v. Shinkle, 231 Or. 528, 538 (1962). The Oregon legislature has legislated a limited waiver of sovereign immunity for tort claims in the Oregon Tort Claims Act (OTCA). ORS 30.265(1). Thus, in determining whether the legislature has waived sovereign immunity for RICO

violations, I must consider whether an ORICO claim is a "tort" under the OTCA.

The OTCA broadly defines "tort" as a "breach of a legal duty that is imposed by law, other then a duty arising from contract or quasi-contract, the breach of which results in specific injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy." ORS 30.260(8). Relying on Butterfield v. Oregon, plaintiff argues that ORICO falls within the OTCA sovereign immunity waiver because any breach of a legal duty resulting in damages, whether imposed by common law or statute, other than those created in contract, is a tort. Butterfield, 163 Or. App. 227, 231-32 (1999). I cannot read Butterfield's holding so broadly. Instead, I agree with defendants that Butterfield's holding turned on the fact that the statute under while the plaintiff brought suit–the Fair Labor Standards Act–imposed duties on the state to its salaried employees. Id. at 234.

Central to Butterfield's holding was the pre-existing duty the state owed to the plaintiffs as state employees. Id. at 238. In contrast the purpose of ORICO is to "eliminate the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." S.Rep. No. 617, 91st Congress, 1st Sess. 76 (1969); see also State v. Blossom, 88 Or App 75, 744 P2d 281 (1987) (stating because ORICO "was modeled after federal statutes, 18 U.S.C. 1961 to 1968, federal cases interpreting federal statute are persuasive in interpreting intent of Oregon legislature."). In other words, ORICO does not set forth duties owed by the state to its employees (or to private citizens) but instead sets forth a framework for criminal prosecution or civil liability for engaging in racketeering. Accordingly, I find that ORICO claims do not fall within the OTCA sovereign immunity waiver.

Even assuming arguendo that sovereign immunity did not bar the ORICO claim, this claim

Page 19 - ORDER

would fail for failure to establish the requisite predicate acts. ORS 166.715 sets forth specific "predicate acts" that may constitute "racketeering activity" for a ORICO violation. Plaintiff's complaint alleges that Riddell attempted to induce false testimony, destroyed public records, and perjured himself. Plaintiff has cited no case law, and this court does not know of any, which establishes that deleting public records that are ultimately recovered can form the basis for tampering with public records charge. Similarly, withdrawal is a defense to a perjury charge. See e.g. State v. Stilwell, 109 Or. 643, 668 (1923) (before one can be convicted, it must be shown beyond a reasonable doubt that he testified as charged). Thus of the foregoing alleged offenses, only tampering with a witness qualifies as a predicate act under ORICO. Further, the allegations of official misconduct encompass the tampering with a witness allegation, and ORICO does not allow a single violation to constitute multiple predicate acts. ORS 166.715(4). I find that plaintiff has not alleged a pattern of racketeering activity.

## III.    Failure to Comply with the Notice Requirement of OTCA

Defendants argue that I must dismiss the state law claims against Kroger and the state of Oregon for failure to provide timely notice of the claims. The OTCA requires that a party seeking to pursue damages against a public body must provide notice to the public body within 180 days from the alleged loss or injury. ORS 30.275(2)(b). The "discovery rule" applies to the OTCA's notice requirement, meaning that the 180 day period does not begin to run until the plaintiff knows, or reasonably should have known, facts that would make a reasonable person aware of a potential claim. Johnson v. Multnomah Cnty Dept. of Comm. Justice, 344 Or. 111, 118 (2008); Benson v. Oregon, 196 Or. App. 211, 215 (2004).

Plaintiff gave notice of his claim on June 24, 2011. Defendants argue that any claims which

Page 20 - ORDER

occurred prior to December 26, 2010 (which was 180 days before the notice) are untimely. Plaintiff's complaint, however, asserts that he did not have reason to believe he had an injury to legally protected interests until he was put on leave on December 29, 2010. In the context of a motion to dismiss, I must accept these allegations as true. Accordingly, I find that plaintiff did not discover his potential claim until December 29, 2010 and thus his third, fourth and fifth claims are timely under the OTCA.

## IV.    Discretionary Immunity

Defendants contend that I should dismiss plaintiff's tort claims because the actions underlying the claims involve discretionary functions and, therefore, defendants are entitled to immunity. Defendants specifically note that Oregon case law recognizes that government officials are shielded from liability for "decisions that require a policy judgement by a person or body with governmental discretion." Timberlake v. Washington Cnty, 228 Or. App. 607, 614 (2009).

I am mindful that officials exercising discretion in policy decisions are entitled to immunity. Here, however, plaintiff alleges that Riddell's and Kroger's wrongful actions were motivated by intentional malice and ill will. A government official motivated by malice alone is not exercising discretion or weighing duties relevant to his duties to the public. Hanes, 578 F.3d at 496. At this stage of the pleadings, I cannot find that defendants are entitled to discretionary immunity on plaintiff's state law claims.

## V.    Failure to Suffer Damages

Defendants argue that I should dismiss plaintiff's state law claims because he has failed to establish that he has suffered an actual, present injury. Plaintiff's complaint, however, alleges damages of lost wages and benefits, harm to reputation, emotional distress and costs incurred

Page 21 - ORDER

defending himself. At this stage of the pleadings, these allegations, which I must accept as true, are sufficient to establish the required actual, present injury.

## VI.    Failure to Plead Elements of Emotional Distress

Defendants assert that plaintiff has failed to establish that defendants' conduct constituted an "extraordinary transgression of the bounds of socially tolerable conduct." Babick v. Oregon Arena Corp., 333 Or. 401, 411 (2002). As discussed above, plaintiff has alleged that, despite a finding that plaintiff did not engage in unlawful activity, defendants investigated him anyway, recommended he be fired, interfered with an independent review of the underlying investigation, withheld exculpatory documents and refused to comply with public records requests. Given these allegations, I find that plaintiff has sufficiently alleged "extraordinary transgressions of the bounds of socially tolerable conduct."

## VII.    Intentional Interference with Economic Relations

Defendants argue that plaintiff's intentional interference with Economic Relations claim fails because: (1) as a state employee, Riddell was not a third party; and (2) there was no interference with plaintiff's job because he was not terminated. Public-employees acting outside of the scope of their employment can be third parties to another's employee relationship for the purposes of an intentional interference claim. McGanty v. Staudenraus, 321 Or. 532, 539 (1995). Here, plaintiff alleges that a desire to serve himself, not the state, motivated Riddell's actions during the criminal investigation and other events. Accordingly, at this stage of the pleadings, I find that plaintiff has sufficiently alleged interference by a third party. Further, plaintiff alleges injury of a loss of benefits and wages and harm to his reputation. At this stage of the pleadings, this is sufficient to move forward with this claim.

Page 22 - ORDER

## VIII.    Negligence Claims

Defendants urge dismissal of plaintiff's negligence claims, arguing that he cannot establish the heightened duty of care required for negligence claims for economic losses. As plaintiff points out, however, the economic loss doctrine does not apply to conduct that is intentional or reckless. Onita Pacific Corp. v. Trustees of Bronson, 315 Or. 149, 157 (1992). Here, plaintiff alleges negligence liability stemming from intentional, knowing and deliberate actions by Kroger and Riddell. At this point in the pleadings, his allegations in support of his negligence per se claims are sufficient to move forward.

## IX.    Claim Preclusion

Defendants argue that the doctrine of claim preclusion bars this federal action because the issues raised here were not raised in plaintiff's public records action against the Office of the Attorney General. Claim preclusion bars parties from litigating more than one action based on the same transaction or series of transactions. New Hampshire v. Maine, 532 U.S. 742, 748 (2001). During oral argument, Kroger's counsel argued that the state public records action was not used for its typical accelerated process of forcing a quick production of records, but instead involved a full discovery. (#39 at 28: 15-24). Counsel further argued that the documents obtained in that action do not form the basis of any of the instant claims and that the conduct alleged here was fully litigated in the public records case. (#39 at 30:7-9).

Comparison of this action with the public records action reveal that, despite defendants' argument, the two actions are not based on the same factual transactions and were not fully litigated in the public records case. Tyler v. Horizon Project Inc., 26 F.Supp.2d 1250 (D.Or.,1998). In the public records case, plaintiff alleged that Kroger, in his official capacity, did not timely provide

Page 23 - ORDER

documents requested under a public records request and requested declaratory and injunctive relief. Here, plaintiff alleges that defendants, acting for their own personal gain, violated his rights by pursuing a criminal investigation against plaintiff despite knowing he had not acted unlawfully. Then, when this objective failed, knowingly presented false information about plaintiff in an attempt to get him fired and interfered with his attempts to access exculpatory evidence and with the independent review of the criminal investigation. In short, although there is some overlap, the actions are based on different facts and litigation of the current claims will not needlessly expend judicial resources or minimize the possibility of inconsistent decisions. Montana v. United States, 440 U.S. 147, 153–154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Moreover, under Oregon law, plaintiff's federal constitutional and state law claims could not have been joined in his public records care. ORS 192.480; 192.490(1).

Accordingly, I decline to dismiss this action on the basis of claim preclusion.

## X.    Punitive Damages

Defendants argue that plaintiff cannot recover punitive damages on his claims against the state under the OTCA. Plaintiff, however, has not sought punitive damages. Accordingly, I deny this motion as moot. I note, however, that should plaintiff move to amend his complaint to include punitive damages, he should be mindful of the OTCA limitation on punitive damages.

### Conclusion

Kroger and the state of Oregon's motion for judicial notice of the documents filed in the Marion County Circuit Court in Mark Long v. John Kroger in his Official Capacity as Attorney General for the State of Oregon, Case No. 11C14422 (#s 12, 32 and 36) is granted. Defendants' motions to dismiss (#s 7, 10) are granted with respect to plaintiff's ORICO claim (Second Claim)

Page 24 - ORDER

and denied with respect to all other claims.    In light of the court's ruling Kroger and the state of

Oregon's motion for a protective order to stay discovery (#13) is denied.

     IT IS SO ORDERED

     DATED this _____ day of February 2012 .

                          THOMAS M. COFFIN
                    United States Magistrate Judge

Page 25 - ORDER